UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| APRIL KLEIN, : | |
| : | |
| Plaintiff, : | Amended Complaint |
| : | |
| v. : | Civil Action No. 07-cv-160 |
| : | |
| NEW YORK UNIVERSITY, : | Jury Trial Demanded |
| : | |
| Defendant. : | |
| : | |

## COMPLAINT

Plaintiff, April Klein, by and through her attorney, Robert T. Vance, Jr., brings this action seeking relief from the employment discrimination of Defendant, New York University (hereinafter "NYU" or "Defendant"), and makes the following allegations:

## INTRODUCTION

1.      Plaintiff brings this action against NYU for legal relief to redress gender discrimination and retaliation pursuant to the "Civil Rights Act of 1964," as amended by the "Civil Rights Act of 1991" (hereinafter "Title VII"), 42 U.S.C. § 2000e et seq., and to redress unlawful violations of Plaintiff's rights under the "Equal Pay Act of 1963" (hereinafter "EPA") of the "Fair Labor Standards Act" (hereinafter "FLSA"), 29 U.S.C. § 206(d).

2.      As set forth below, NYU engages in a pattern and practice of discrimination against its female faculty members in promotions, compensation, and general academic support, and retaliates against female faculty members who complain about such discrimination. Its employment policies and practices have created a glass ceiling for female faculty. Specifically,

because Plaintiff is a woman, she has been denied promotions and the same benefits and support that are routinely provided to her male colleagues. NYU has knowingly allowed such discrimination and harassment to continue by failing to take prompt and effective action to stop it.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), 29 U.S.C. § 216(b) (FLSA), and 42 U.S.C.A § 706(f)(3) (Title VII).

4. Plaintiff has timely filed a Charge of gender discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 520-2006-01580, has received a Notice of Right to Sue letter from the EEOC, and is commencing this action within 90 days of receipt of such letter.

5. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b) because all of the acts that give rise to this Complaint occurred in this district, and the Defendant resides in this district.

## THE PARTIES

6. Plaintiff, April Klein, is a female citizen of the United States and a resident of New York, New York. She has a Ph.D. in Finance from the University of Chicago. Plaintiff began employment at NYU at the Leonard N. Stern School of Business (hereinafter "Stern") in 1987 as a visiting Professor, and is currently employed by NYU as an Associate Professor in the Accounting Department at Stern.

7. Defendant, NYU, is a private university doing business within the United States, with its principal place of business at Bobst Library, 70 Washington Square South, 1216, New

York, New York 10012.  Stern, which Defendant maintains, is located at Henry Kaufman Management Center, 44 West Fourth Street, New York, New York.  NYU provides an education to over 20,000 students at any given time in any given academic year.  At all relevant times hereto, NYU has had more than 500 employees and has been an "employer" of Plaintiff as defined by § 203(d) of the FLSA, and § 2000e(b) of Title VII.  The acts set forth in this Complaint were authorized, ordered, condoned and/or done by NYU's officers, agents, employees and/or representatives while actively engaged in the management of NYU's business.

## **FACTS**

6.    Plaintiff began working for Defendant in 1987 as a visiting Professor.  In 1989, Plaintiff accepted a full time tenure track position, and in 1992 she was granted tenure.

7.    Plaintiff was denied a promotion to full professor in May 1999, despite having obtained the unanimous positive vote of her Department.

8.    Despite being amply qualified, Plaintiff was rejected for three Faculty Fellowships, which are awarded every three years, three consecutive times—in 1999, 2002, and 2005.

9.    While Plaintiff was being considered for tenure, she was propositioned for sex three times by a senior faculty member who is now deceased.

10.   In 1998, Plaintiff, 10 tenured female faculty members and one female Clinical Professor signed a petition complaining about the sex discrimination at Stern and presented it to Deans George Daly and David Backus.

11.   In response to the petition, the Committee on the Role and Status of Women (hereinafter "the Committee") was formed.  The Committee hired two professional consultants—Catalyst and Organization Resources Counselors, Inc.—to assist it in collecting

and summarizing information about the Stern faculty.

12. Catalyst, a leading research and advisory organization in the field of gender diversity, was hired to assess the culture and climate of Stern and how it affected Stern's ability to attract, retain, and advance women faculty. Organization Resources Counselors, Inc. was hired to examine faculty salaries and total compensation by gender, rank, and years of service.

13. In or about April 2001, the Committee issued a report which set out their findings. The Committee found that women were as productive as their male colleagues, but did not receive equivalent support, benefits, or promotions, and that 60% of women faculty fell below the men's median total compensation. The Committee recommended Stern ensure equity in tenure and promotion decisions.

14. In addition, the Committee also found that women faculty were less satisfied with Stern's work environment than male faculty, and recommended that Stern create a work environment that is more inclusive and supportive. Stern has failed to implement the recommendations of the Committee.

15. In May 1999, despite having received the unanimous positive vote of her Department, Defendant denied Plaintiff's request for a promotion to Full Professor in retaliation for, and because of, Plaintiff's participation in and signing of the petition presented to Deans Daly and Backus complaining about sex discrimination at Stern

16. Defendant also denied Plaintiff's request for a promotion to Full Professor because of her sex.

17. After Plaintiff was rejected for promotion to Full Professor, Plaintiff's former chairperson, a male, was promoted to Full Professor despite not having published a paper in a top-tier journal in over 15 years.

18. Plaintiff's former chairperson's promotion was a direct violation of the NYU Faculty Handbook, which states that promotion to Full Professor must be based on national research reputation and can never be awarded based on service.

19. Plaintiff was rejected three consecutive times—in 1999, 2002, and 2005—for a Faculty Fellowship, which is awarded every three years, because of her sex.

20. The professors in the Accounting Department who last received the Fellowship are all male.

21. Plaintiff's research record is as strong as, if not stronger than, the three current holders of the Fellowships.

22. During the Fall Semester of 2004, when Dave Backus became Chairperson of the Accounting Department at NYU, he laughed at Plaintiff and told her that she should resign after she informed him that sex discrimination and harassment were prevalent in the Accounting Department.

23. During a March 8, 2005 meeting, Dean Sproull asked Plaintiff to resign, telling her that Stern would never pay her market value. Dean Sproull made this statement to Plaintiff because of Plaintiff's sex.

24. During a May 10, 2005 meeting, Dean Backus told Plaintiff that he was taking her resume to members of the Promotion and Tenure Committee and other senior faculty members who might potentially be members of this committee in order to ascertain whether Plaintiff should be promoted to Full Professor.

25. Dean Backus's action was contrary to NYU policy, which states that members of the Promotion and Tenure Committee are to receive the candidate's complete file when considering promotion or tenure requests, not just a portion of it.

26.     Dean Backus took such actions because of Plaintiff's sex.

27.     During the May 10, 2005 meeting, Dean Backus also told Plaintiff that he would not support her for promotion. He declined to support her because of her sex.

28.     At the May 10, 2005 meeting, Dean Backus belittled Plaintiff's awards because of her sex. He also punished Plaintiff for taking a sabbatical by giving her a low score for service based upon missing activities that took place while she was on sabbatical. The punishment he imposed was meted out because of Plaintiff's sex.

29.     Prior to the May 10, 2005 meeting, Dean Backus told Plaintiff that she needed to have a better resume than the male faculty in her Department in order to receive the summer grant she was seeking. This statement was made because of Plaintiff's sex.

30.     During the Spring Semester 2005, Dean Backus told Plaintiff that all of the Deans at Stern were ordered by Dean Lee Sproull and/or Dean Thomas Cooley to report all complaints against Plaintiff to the Dean's Office, regardless of how frivolous the complaints may have been. This order did not apply to anyone else in the Accounting Department and was given because of Plaintiff's sex and in retaliation for her complaints about sex discrimination.

31.     During the Fall Semester of 2005, a faculty member told Plaintiff that Dean Cooley belittled her achievements in a public forum—a lunch or dinner among NYU faculty. Such belittling was directly motivated by and made because of Plaintiff's sex.

32.     On October 5, 2005, Dean Sproull conducted a hostile and intimidating interview with Plaintiff in which she questioned Plaintiff regarding her role as an elected member of the Stern Faculty Grievance Committee (hereinafter "Grievance Committee"). At the time, the Grievance Committee was handling a complaint made by another female faculty member alleging sex discrimination and harassment.

33. Following the October 5, 2005 interview, Dean Sproull asked Plaintiff to recuse herself from the Grievance Committee after the case was completed.

34. Plaintiff receives an annual review from the Senior Faculty Review Committee in which, inter alia, future compensation is determined.

35. In 2005, the Senior Faculty Review Committee was partially comprised of faculty members who previously rejected Plaintiff's requests for a Faculty Fellowship.

36. Plaintiff's work performance is superior to the work performance of male tenured professors at Stern.

37. Despite her superior performance, in 2005 Plaintiff received only a 3% raise, whereas her similarly situated male co-workers received substantially higher raises. The disparate pay raise was the result of sex discrimination.

38. Plaintiff complained to Chairman Backus that her raise was not equivalent to that granted to her similarly situated male co-workers. In response, Chairman Backus told Plaintiff that she should not compare herself to male faculty members.

39. One of the male faculty members who received a substantially higher raise than Plaintiff has not published a scholarly article in a top-tier journal in 20 years. In contrast, Plaintiff has garnered more recognition for her work historically and currently than her male colleagues.

40. For example, for the academic year 2004-2005, Plaintiff received the following recognition:

    a.    2005 American Accounting Association Notable Contribution to Accounting Literature Award;

    b.    Selected to serve on the Editorial Advisory Board of The Accounting

Review;

c. Plenary Speaker at the 2005 American Accounting Association Financial Accounting Reporting Section, San Diego, CA;

d. Placed on NASDAQ Hearing Review and Listing Council;

e. Received 37 citations for 2004 – 2005; 223 in total; and

f. Gave nine research presentations from September 2004 – May 2005.

And for the 2005-2006 academic year, Plaintiff received the following recognition:

a. Published a journal article in January 2006 in The Accounting Review (a top-tier journal);

b. Selected to serve on the Editorial Board of The Accounting Horizons;

c. One of only two accounting professors in the country invited to attend two conferences at the National Bureau of Economic Research;

d. Achieved the second highest ranking among members of the Stern Accounting Department in the ranking of the SSRN business school and law professors; and

e. One of the highest ranked professors in the Stern Accounting Department in citations, as compiled by Google Scholar.

41. On or about November 1, 2005, Plaintiff's attorney sent a letter to Dr. John Sexton, the President of NYU, outlining the sex discrimination and retaliation Plaintiff had experienced as of that date. Stern failed to investigate the complaints, and instead continued its pattern of sex discrimination and retaliation.

42. In April 2006, Plaintiff filed a Charge of Discrimination with the EEOC, Charge No. 520-2006-01580, against NYU alleging continuing sex discrimination and retaliation. The

Charge was served on Defendant. Since filing that Charge, Stern has continued to discriminate and retaliate against Plaintiff in the following respects:

    a.    Plaintiff asked the PhD academic advisor in Accounting, Professor Eli Bartov, in the Spring of 2006 and in November 2006, to teach a seminar in the Accounting Ph.D. program and was denied both times. She was told that the three (3) available seminars were owned by male faculty, and that a new seminar could not be created, nor would it be considered. Teaching in the Ph.D. program is an important benefit because it allows for interaction with Ph.D. students, who then may work with faculty on future research. Because Stern does not provide research assistants to faculty, Plaintiff was denied an equal opportunity to improve her research because of her sex.

    b.    Since Fall 2004, Plaintiff had been working closely with one PhD student, Emanuel Zur. Mr. Zur and Plaintiff wrote a paper entitled "Hedge Fund Activism," which has been praised within the Stern community and has been prominently featured in the financial press, for example on Bloomberg, CNBC, New York Times.com, Washington Post.com. From this paper, Mr. Zur is developing his PhD dissertation, which Plaintiff is actively supervising and advising him on. In October 2006, and again in December 2006, Mr. Zur told Plaintiff that he was being pressured to exclude Plaintiff from being the Chair of his dissertation committee and to designate Professor Bartov instead. This is detrimental to Plaintiff's professional reputation. First, serving as the Chair of a dissertation committee provides one with input into the promotion and tenure process. By being denied this designation, Plaintiff's contribution to Mr. Zur's dissertation will be greatly minimized. Second, because Mr. Zur's dissertation is based on Plaintiff's paper with him, Professor Bartov will also be given credit for having

9

developed this paper. This implies that he has supervised Plaintiff's work as well, which he has not.

      c.      Plaintiff asked the Deputy Accounting Chair, Professor Alex Dontoh, for a better office, and in December 2006 he denied her request, despite the fact that Stern is constructing at least six (6) new offices superior to Plaintiff's on the same floor as her current office. However, three male associate professors at Stern have already been assigned to the new offices: Alex Donoth, Paul Zarowin, and Stephen Ryan. For each faculty member, the new office is substantially superior to his current office. Plaintiff's current office is small, the radiator/air conditioner is inoperable, and it overlooks an apartment across the street in which a naked man frequently walks around. Plaintiff complained about this to Professor Dontoh and to the current and previous Chairs, who laughed about it, but refused to move her office. Instead, Plaintiff was offered an office that is in even worse condition than her current office.

      d.      Over the last three years, Plaintiff has been given or offered inferior and onerous teaching schedules. She was offered an inferior and onerous teaching schedule for the next academic year, 2006-2007. All of the male faculty members who do research that is published in "top-tier" journals were given two-day/week teaching schedules with one (and occasionally two) prep sessions. Many were allowed to complete their teaching assignments in one semester instead of two. However, Plaintiff, who also does research that is published in "top-tier" journals, was offered or given teaching schedules that included a three-day/week teaching schedule, three prep sessions, a Friday morning class that precludes her from attending the accounting research seminar, and a Thursday evening class. Teaching a Thursday evening class precludes her from presenting papers

10

outside Stern or attending conferences, because almost all presentations and conferences begin on Friday mornings  Yet, Plaintiff has have been given that class for the last two years.  For the last three years, she has been given one new prep each year, sometimes without her knowledge or consent.  She has also had her teaching times and dates changed at the last moment.  Plaintiff has been asked to teach a new prep again next year.  She has repeatedly complained to Deputy Chair Alex Donoth about her teaching schedules, last in December 2006, but he refused to change them, including for the next academic year.

     e.     In July or August 2006, Plaintiff learned that two male associate professors are being considered for promotion to Full Professor, Paul Zarowin and Stephen Ryan.  In December 2006, Fred Choi, the Chairperson of her Department, told Plaintiff that she was not being considered for promotion to Full Professor because "it is not [my] time."  However, Plaintiff's external record is far superior to Stephen Ryan's in terms of citations and awards.

     f.     Plaintiff was denied a faculty fellowship by Dean Cooley in February 2006.

     g.     Plaintiff requested in March 2006 and again in July 2006 a three-bedroom apartment, but was denied.  In July 2006, she asked that the vacant apartment next door to her be combined with her current apartment.  At that time, NYU was combining other apartments, but declined to do so for Plaintiff or to provide a three-bedroom apartment for her.

43.     Plaintiff has complained to her superiors about defendant's discrimination, harassment and retaliation.  However, defendant's management has failed to timely or

11

adequately address any of Plaintiff's concerns.

44. The actions of Plaintiff's superiors were intentional, malicious, and in reckless disregard of Plaintiff's right to be free from sex discrimination, harassment and retaliation.

45. As a direct and proximate result of defendant's actions and omissions, Plaintiff suffered loss of income, loss of professional opportunities, embarrassment, humiliation, anxiety and anguish.

## PLAINTIFF'S CLAIMS

### *Count I*

### Gender Discrimination

46. Plaintiff re-alleges and incorporates herein by reference paragraphs 1 – 45, inclusive, as if set forth fully herein.

47. NYU has discriminated against Plaintiff with respect to the terms and conditions of employment because of her sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., as amended by the Civil Rights Act of 1991.

48. NYU's conduct has been intentional, deliberate, willful, and conducted in callous disregard of the rights of the Plaintiff.

49. By reason of NYU's discrimination, Plaintiff is entitled to all legal and equitable remedies available under section 2000e.

### *Count II*

### Retaliation

50. Plaintiff re-alleges and incorporates herein by reference paragraphs 1 – 49, inclusive, as if set forth fully herein.

51. NYU has retaliated against Plaintiff by, inter alia, refusing to promote her to Full

Professor and by denying her the same benefits as accorded to similarly situated male faculty members at Stern because, inter alia, she signed a petition protesting sex discrimination at Stern, she complained to her superiors and she filed a Charge of Discrimination with the EEOC, all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq., as amended by the Civil Rights Act of 1991.

52. NYU's conduct has been intentional, deliberate, willful, and conducted in callous disregard of the rights of the Plaintiff.

53. By reason of NYU's discrimination, Plaintiff is entitled to all legal and equitable remedies available under section 2000e.

### *Count III*

Equal Pay Act of 1963

54. Plaintiff re-alleges and incorporates herein by reference paragraphs 1 – 53, inclusive, as if set forth fully herein.

55. At all times relevant to this Complaint, Plaintiff was performing work which was at least substantially equal to that of male tenured faculty members at Stern, considering the skills, duties, supervision, efforts, and responsibilities of the position.

56. The conditions where Plaintiff worked were the same as those where male tenured faculty members at Stern worked.

57. NYU did not pay Plaintiff wages equal to those paid to similarly situated male tenured faculty members in violation of the Equal Pay Act of 1963, 29 U.S.C. § 206(d), of the Fair Labor Standards Act, 29 U.S.C. §§ 201, et. seq.

58. NYU's conduct has been intentional, deliberate, willful, and conducted in callous disregard of the rights of the Plaintiff.

59.     By reason of NYU's failure to pay Plaintiff wages equal to those of similarly situated male employees, Plaintiff is entitled to all legal and equitable remedies available under the Equal Pay Act of 1963.

## JURY DEMAND

60.     Plaintiff hereby demands a trial by jury as to all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, April Klein, respectfully prays that this Court:

a.     adjudge, decree and declare that NYU has engaged in illegal gender discrimination and retaliation against Plaintiff and that the practices of NYU complained of herein are violative of the rights secured to the Plaintiff;

b.     issue a permanent prohibitory injunction prohibiting NYU and its officers, agents, employees, and successors from engaging in any further unlawful practices, policies, or customs of gender discrimination and retaliation complained of herein;

c.     order NYU to provide appropriate job relief to Plaintiff in the form of promotion to full professor and any other job relief determined to be appropriate;

d.     enter judgment in favor of Plaintiff and against NYU for all available remedies and damages under law and equity, including, but not limited to, back pay, front pay, and past and future mental anguish and pain and suffering in amounts to be determined at trial;

e.     order NYU to pay punitive damages to Plaintiff in an amount to be determined at trial;

f.     order NYU to pay the attorney's fees, costs and expenses and expert witness fees

of Plaintiff associated with this action;

     g.    grant such other and further legal and equitable relief as may be found appropriate and as the Court may deem just or equitable; and

     h.    retain jurisdiction until such time as the Court is satisfied that NYU has remedied the unlawful and illegal practices complained of herein and is determined to be in full compliance with the law.

Dated:  February 23, 2007              /s/ Robert T Vance Jr
                                         Robert T Vance Jr (RTV3988)
                                         Law Offices of Robert T Vance Jr
                                         100 South Broad Street, Suite 1530
                                         Philadelphia PA 19110
                                         215.557 9550

                                         Attorney for the Plaintiff